57 F.3d 1084
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Elias M. GONJI, Petitioner,
v.
MERIT SYSTEMS PROTECTION BOARD, Respondent.
 No. 94-3456.
 United States Court of Appeals, Federal Circuit.
 June 9, 1995.
 
 Before LOURIE, Circuit Judge, COWEN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.
 COWEN, Senior Circuit Judge.
 
 
 1
 Petitioner Elias M. Gonji (Gonji) seeks review of the final decision of the Merit Systems Protection Board (MSPB or Board), Docket No. DC-315H-94-0011-I-1,[1] which summarily dismissed his appeal for lack of jurisdiction after finding that he was a probationary appointee with only limited rights of appeal. The Board held that Gonji was not entitled to a hearing because he had failed to raise non-frivolous issues of fact relating to jurisdiction. We vacate the decision, and remand for an evidentiary hearing on the question of jurisdiction.
 
 BACKGROUND
 
 2
 The principal jurisdictional issue raised by this appeal is whether Gonji had acquired the status of an "employee" before his removal. As an "employee," Gonji would be entitled to the benefit of the expanded appeal procedures provided in 5 U.S.C. Secs. 7513, 7701 (1994) and 5 C.F.R. Sec. 752.404 (1995). The Board held that Gonji was a probationer at the time he was terminated. A probationer is an individual who is serving a probationary or trial period under an appointment in federal service and therefore has not attained "employee" status under 5 U.S.C. Sec. 7511(a)(1) (1994).[2]
 
 
 3
 The appeal rights of probationers terminated for unsatisfactory performance or conduct are strictly limited to allegations of partisan political or marital status discrimination. See 5 C.F.R. Secs. 315.804, 315.806 (1995). Gonji raised allegations of race and national origin discrimination in the appeal of his termination, but did not raise allegations of partisan political or marital status discrimination. The Board may consider claims of other forms of prohibited discrimination (race, color, religion, sex, national origin, age, or handicap) only if raised in addition to claims of discrimination based on partisan political reasons or marital status. See 5 C.F.R. Sec. 315.806(d) (1995). Because the Board treated Gonji as a probationer with only limited rights of appeal, it found that it lacked jurisdiction to entertain his allegations of race and national origin discrimination.
 
 
 4
 The Board held that Gonji's appointment required that he complete a one-year trial period, and found that he had served less than eight months in that position at the time he was terminated for unsatisfactory work performance. Gonji argues that his prior federal service should be credited toward completion of his probationary period, and that when this credit is given, he had completed his probationary period. Gonji raised this issue before the Board, but the Administrative Judge did not address it in her initial decision, nor did the Board acknowledge the issue when it denied Gonji's petition for review of the initial decision. In Manning v. Merit Systems Protection Board, 742 F.2d 1424, 1427 (Fed.Cir.1984), we held that the Board should honor a request for a hearing when a petitioner's allegations raise non-frivolous issues of fact relating to jurisdiction that cannot be resolved simply on submissions of documentary evidence. Id. at 1428; see also Dumas v. Merit Sys. Protection Bd., 789 F.2d 892, 894 (Fed.Cir.1986). Accordingly, we must determine whether Gonji has raised non-frivolous issues of fact relating to jurisdiction: that is, determine whether Gonji has alleged facts which if proven could make a prima facie case that he had completed his probationary period.
 
 DISCUSSION
 
 5
 Petitioner Gonji was terminated from his position as a Library Technician with the Department of Defense (DoD) Dependents Schools in Rhein Main, Germany on May 29, 1993. At the time of his removal, Gonji was serving a two-year overseas limited term appointment. Overseas limited appointees are required to serve a trial period of one year when given an overseas limited term appointment. 5 C.F.R. Sec. 301.204(a) (1995). Gonji was appointed as Library Technician on October 4, 1992, so he had served less than one year at the time he was removed. The Government argues that Gonji was therefore a probationer at the time of his removal and had only limited appeal rights.
 
 
 6
 Gonji contends that he completed his probationary period during prior federal service and was not required to serve a new probationary period upon his appointment with the DoD Dependents Schools. Prior to his appointment as Library Technician with the DoD Dependents Schools, Gonji served as a Laborer with the DoD Postal Service in Germany for approximately three and one-half years. The Government concedes that Gonji completed a probationary period in this prior position, but argues that Gonji was required to serve a new probationary period upon his appointment as Library Technician, citing 5 C.F.R. Sec. 301.204(a) (1995) ("An overseas limited [appointee] ... is required to serve a trial period of 1 year when given ... an overseas limited term appointment."). It is clear that Gonji was required to serve a new probationary period upon his appointment as a Library Technician with the DoD Dependent Schools. However, this requirement does not end the inquiry. Under certain conditions, individuals are allowed to count prior federal service toward completion of a new probationary period. At the time of Gonji's removal, the Federal Personnel Manual (FPM) governed the procedures for determining whether Gonji had completed his probationary period,[3] but we first turn to the United States Code to determine the statutory basis for Gonji's employment status.
 
 
 7
 Section 7511(a)(1) of Title 5 of the United States Code defines the term "employee" for the purposes of an individual's rights of appeal to the Board.[4] Only those individuals who have attained "employee" status have full rights of appeal.
 
 Sec. 7511. Definitions; application
 
 8
 (a) For the purpose of this subchapter--
 
 
 9
 (1) "employee" means--
 
 
 10
 (A) an individual in the competitive service--
 
 
 11
 (i) who is not serving a probationary or trial period under an initial appointment; or
 
 
 12
 (ii) who has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less;
 
 
 13
 (B) a preference eligible in the excepted service who has completed 1 year of current continuous service in the same or similar positions--
 
 
 14
 (i) in an Executive agency; or
 
 
 15
 (ii) in the United States Postal Service or Postal Rate Commission; and;
 
 
 16
 (C) an individual in the excepted service (other than a preference eligible)--
 
 
 17
 (i) who is not serving a probationary or trial period under an initial appointment pending conversion to the competitive service; or
 
 
 18
 (ii) who has completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less;
 
 
 19
 Subsections A, B, and C define employee status for individuals in the competitive service, preference eligibles in the excepted service, and non-preference eligibles in the excepted service, respectively.[5] Subsection (A) controls Gonji's employment status because each of the overseas limited appointments under which he served was a position in the competitive service.
 
 
 20
 A. "Competitive Service" vs. "Competitive Status"
 
 
 21
 The Government first raises the issue that Gonji had not acquired "competitive status" at the time he was terminated. To support its argument that Gonji does not meet the definition of an employee under 5 U.S.C. Sec. 7511(a)(1), the Government cites the Civil Service Regulations and the following quote from the Executive Order that provides authority for appointments to overseas positions:
 
 
 22
 United States citizens may be recruited overseas for appointment to overseas positions in the competitive service without regard to the competitive requirements of the Civil Service Act. Persons so recruited who meet the qualification standards and other requirements of the Office of Personnel Management (Office) for overseas positions may be given appointments to be known as "overseas limited appointments." Such appointments shall be of temporary or indefinite duration, and shall not confer the right to acquire a competitive status.
 
 
 23
 Exec.Order No. 10,577 (1954), 3 C.F.R. 218 (1954-1958), as amended by Exec.Order No. 10,641 (1955), 3 C.F.R. 274 (1954-1958), reprinted as amended in 5 U.S.C. Sec. 3301 note at 662 (1994) (emphasis added); see also Civil Service Rules, 5 C.F.R. Sec. 8.2 (1995). The Civil Service Regulations provide similar language:
 
 
 24
 An overseas limited employee does not acquire a competitive status on the basis of his or her overseas limited appointment.
 
 
 25
 5 C.F.R. Sec. 301.204(a) (1995) (emphasis added).
 
 
 26
 The Government constructs its argument by first citing the section 7511(a)(1) definition of an "employee" as "an individual in the competitive service," and then citing the above regulation and Executive Order which show that Gonji, as an overseas limited appointee, did not acquire a competitive status. By arguing that Gonji does not meet the definition of an employee under section 7511(a)(1) because he did not acquire a competitive status, the Government confuses the terms "competitive status" and "competitive service."
 
 
 27
 "Status" and "service" are different terms in civil service parlance and should not be confused. Bailey v. Richardson, 182 F.2d 46, 53 (D.C.Cir.1950), aff'd, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1951). Competitive status means an individual's basic eligibility for noncompetitive assignment to a competitive position. 5 C.F.R. Sec. 212.301 (1995). Competitive status permits promotion, transfer, reassignment, or reinstatement without competitive examination. Id. On the other hand, the term "service" refers to positions or offices. The two terms are mutually exclusive. See FPM Ch. 212, 2-2 (1989) (explaining that a position may be in the competitive service "whether or not the person occupying the position has competitive status"). An individual holding a position in the competitive service does not necessarily have competitive status, see, e.g., Carter v. Department of the Army, 19 MSPR 135, 137 (1984) (holding that a TAPER (Temporary Appointment Pending establishment of a Civil Service Register) appointee is in the competitive service but does not have competitive status), and an individual with competitive status is not necessarily in the competitive service, see, e.g., Bailey, 182 F.2d at 53 ("One who has been separated from the service does not occupy a position and so is not in the service, even though he retains his competitive status.").
 
 
 28
 Gonji's personnel records, as well as the Executive Order providing authority for appointments to overseas positions, show that Gonji was in the competitive service at the time he was terminated. The Executive Order quoted above states that overseas limited appointments are "positions in the competitive service." 5 C.F.R. Sec. 8.2 (1995). Each of the Standard Form 50 Notice of Personnel Action documents submitted to this court indicates that Gonji held a position in the competitive service.
 
 
 29
 Overseas limited appointees serve in positions in the competitive service and may become statutory employees under section 7511(a)(1) and gain expanded rights of appeal upon completion of their probation period, regardless of the fact that their position does not confer the right to acquire a competitive status. Gonji held a position in the competitive service at the time he was terminated and clearly satisfies at least this portion of the definition of an "employee" under section 7511(a)(1)(A).
 
 B. Statutory Framework
 
 30
 Because he served in the competitive service, Gonji's employment status is determined by subsection (A) of 5 U.S.C. Sec. 7511(a)(1):
 
 
 31
 (1) "employee" means--
 
 
 32
 (A) an individual in the competitive service--
 
 
 33
 (i) who is not serving a probationary or trial period under an initial appointment; or
 
 
 34
 (ii) who has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less;
 
 
 35
 (emphasis added.) We must first determine whether subdivision (i) or (ii) applies to Gonji. The literal language of the statute, connecting subdivisions (i) and (ii) with the disjunctive or, gives the impression that either subdivision may be applied to determine whether Gonji has acquired "employee" status. The legislative history of the statute and the Civil Service Regulations promulgated pursuant to the statute, however, reveal something different.
 
 
 36
 When section 7511(a)(1)(A) was originally enacted through the Civil Service Reform Act of 1978, Pub.L. No. 95-454, Sec. 204(a), 1978 U.S.C.C.A.N. (92 Stat.) 1111, 1135, the clause now identified as subdivision (i)[6] was drafted to apply to competitive appointees serving under career, career-conditional, and certain other non-temporary appointments, who had served and completed a probationary or trial period. See S.Rep. No. 969, 95th Cong., 2d Sess. 48 (1978), reprinted in 1978 U.S.C.C.A.N. 2723, 2770. The phrase "not serving a probationary or trial period" means having served and completed a probationary or trial period. See id. The Senate Committee Report did not specify the meaning of "certain other non-temporary" appointments, but the Civil Service Regulations on which the statute was based included overseas limited, indefinite, and term appointments in addition to career and career-conditional. See 5 C.F.R. Sec. 752.201(a)(1)(i) (1978) (reproduced infra note 8). The FPM guidelines had a similar provision including term, indefinite, overseas limited term, and overseas limited appointments of indefinite duration. See FPM Supplement 752-1, S2-1(c) (1976) (revoked effective Jan. 11, 1979) (reproduced infra Part C.1). The FPM, the regulations, and the legislative history of the statute indicate that Congress intended subdivision (i) to apply to all appointments that require a probationary or trial period.
 
 
 37
 On the other hand, subdivision (ii) was specifically designed to apply to the smaller group of individuals serving under appointments that do not require a probationary or trial period. See S.Rep. No. 969, 95th Cong., 2d Sess. 48 (1978), reprinted in 1978 U.S.C.C.A.N. 2723, 2770. The Senate Committee Report refers to these subdivision (ii) appointments simply as "certain other appointments, for which there is no probationary or trial period." Id. These appointees are granted "employee" status under the statute after completing "one year of current continuous employment."[7]
 
 
 38
 OPM amended its Civil Service Regulations in 1988 to more fully distinguish the two separate subdivisions of section 7511(a)(1)(A), and to clear up some of the confusion that had developed in application of the statute. See Rules & Regulations, 53 Fed.Reg. 21,618 (1988). OPM amended 5 C.F.R. Sec. 752.401(c) to define the term "employee" to include:
 
 
 39
 (1) An employee in the competitive service who has completed a probationary or trial period; [and]
 
 
 40
 (2) An employee in the competitive service serving in an appointment that requires no probationary or trial period, and who has completed 1 year of current continuous employment in the same or similar positions under other than a temporary appointment limited to 1 year or less; ....
 
 
 41
 5 C.F.R. Sec. 752.401(c) (1995) (emphasis added).[8]
 
 
 42
 At the time Gonji was terminated from his position as Library Technician with the DoD Dependents Schools, he was serving under an overseas limited term appointment not to exceed two years. As an individual serving under an appointment that required a probationary period, see 5 C.F.R. Sec. 301.204(a) (1995), subdivision (i) of section 7511(a)(1)(A) will determine Gonji's status.
 
 
 43
 C. Crediting Prior Service for Overseas Limited Appointees
 
 
 44
 We must first determine whether the position under which Gonji was serving at the time of his termination allows him to credit prior service toward completion of a probationary period. If so, we must then decide whether his prior service qualifies as creditable service. The Government argues that Gonji may not credit prior service because the position from which he was terminated was a temporary appointment. An individual in the competitive service may not combine a series of temporary appointments to qualify as an "employee" under 5 U.S.C. Sec. 7511(a)(1)(A). See Jenkins v. Department of the Army, 32 MSPR 207 (1987). At the time he was terminated from his position with the DoD Dependents Schools, Gonji was serving under an overseas limited term appointment not to exceed two years. We cannot agree that this was a temporary appointment within the meaning of 5 U.S.C. Sec. 7511(a)(1)(A).
 
 
 45
 The Civil Service Regulations outline the three separate types of overseas limited appointments:
 
 
 46
 (a) overseas limited appointments of indefinite duration;
 
 
 47
 (b) overseas limited term appointments for a period not in excess of 5 years; and
 
 
 48
 (c) temporary overseas limited appointments for a period of 1 year or less.
 
 
 49
 See 5 C.F.R. Sec. 301.203 (1995). An individual "is required to serve a 1 year trial period when given an overseas limited appointment of indefinite duration or an overseas limited term appointment." 5 C.F.R. Sec. 301.204 (1995) (emphasis added). At the time of his termination, Gonji was serving under an overseas limited term appointment not to exceed two years and was therefore required to serve a one year trial period. As an individual serving under an appointment over one year in duration and subject to a trial period, we find that Gonji held a non-temporary appointment within the meaning of 5 U.S.C. Sec. 7511(a)(1)(A).
 
 
 50
 As an individual in the competitive service serving under a non-temporary appointment at the time of termination, Gonji may count creditable prior service toward completion of his probationary period. The remaining question is whether Gonji's prior service qualifies as creditable.
 
 1. Guidelines for Crediting Prior Service
 
 51
 Section 7511(a)(1)(A) itself does not address the standards for determining the completion of a probationary period. These standards were left to the Office of Personnel Management. Since before the enactment of the Civil Service Reform Act of 1978, standards for crediting prior service were found only in the Federal Personnel Manual.[9] At the time Gonji was terminated, the Federal Personnel Manual guidelines provided:
 
 FPM Chapter 315 (1992)
 
 52
 Subchapter 8-4. Crediting Service Toward Completion of Probation
 
 
 53
 a. Crediting prior service. When an individual with prior Federal civilian service is subject to a probationary period, the agency must credit such prior service (including nonappropriated fund) toward completion of probation when all three of the following apply:
 
 
 54
 (1) The prior service immediately precedes the probationary appointment and contains no more than one break in service of 30 calendar days or less or there is a break between the prior service and the new appointment of 30 days or less; and
 
 
 55
 (2) The prior service is in the same Federal agency, e.g., Department of the Army (service in a previous agency may be credited only when an employee has been transferred with his or her function);[10] and
 
 
 56
 (3) The prior service is in the same line of work as the position in which the employee is subject to probation. (This requirement does not apply to a disabled veteran converted under section 7-8 of this Chapter.)
 
 
 57
 (emphasis added.) The Government claims that Gonji's prior service was not in the "same agency" and not in the "same line of work," but first argues that these standards apply only to career and career-conditional appointments and therefore do not allow Gonji to credit prior service as an overseas limited appointee.
 
 
 58
 These standards for crediting prior service appear in FPM Chapter 315 and were enacted pursuant to the Civil Service Regulations that cover career and career-conditional appointments. See 5 C.F.R. Sec. 315.802(b) (1995) ("OPM shall publish in the Federal Personnel Manual a statement of the conditions under which prior service is counted toward completion of a probationary period."). FPM Chapter 315 is entitled: "Career and Career-Conditional Employment." It is not clear on the face of these guidelines whether they may also be applied to overseas limited employment.
 
 
 59
 The Civil Service Regulations covering overseas limited appointments, 5 C.F.R. pt. 301, do not include any similar provisions requiring OPM to publish guidelines for crediting prior service. Term appointees under 5 C.F.R. pt. 316(C) are in the same boat. Although term appointees are required to serve a trial period, the regulations do not direct OPM to publish guidelines to allow term appointees to credit prior service toward completion of the trial period. See 5 C.F.R. Secs. 316.301-05 (1995).
 
 
 60
 Although the regulations and guidelines in effect today do not address the issue of tacking (crediting prior service) for term or overseas limited appointments, the Federal Personnel Manual in effect at the time the Civil Service Reform Act of 1978 was enacted did include provisions allowing tacking for these types of appointments. See FPM Supplement 752-1, S2-1(c) (1976). This Supplement specifically referred overseas limited appointees to FPM Chapter 315 to determine the completion of their probationary period:
 
 
 61
 An employee with a term appointment, overseas limited term appointment, overseas limited appointment of indefinite duration, or indefinite appointment is covered by subparts B and C of part 752 [expanded appeal rights] if he is not serving a trial period[11].... (FPM chapter 315 contains information for determining completion of a trial period.)
 
 
 62
 (emphasis added.) We interpret this passage to mean that prior service was counted toward the completion of a probationary period for overseas limited appointees under FPM Chapter 315 at the time Congress enacted the Civil Service Reform Act of 1978. Although this Supplement has since been revoked (effective Jan. 11, 1979) and replaced by Chapter 752, see FPM Chapter 752 1-1a(1) (1980), it nevertheless reflects OPM practice at the time Congress enacted section 7511(a)(1)(A). OPM practice at the time is significant because in enacting the Civil Service Reform Act of 1978, Congress made clear that it was merely providing a statutory basis for current OPM procedures:
 
 
 63
 Subsection (a) [of section 7511] provides a statutory basis for the procedural protections and appeal rights now granted employees in the competitive service who are serving under career, career, career-conditional, or certain other non-temporary appointments, and who have completed a probationary or trial period. Protections against arbitrary or capricious actions have become established by practice and Executive Order--but not by statute--as a basic right of competitive service employees.
 
 
 64
 S.Rep. No. 969, 95th Cong., 2d Sess. 48 (1978), reprinted in 1978 U.S.C.C.A.N. 2723, 2770. The "certain other non-temporary appointments" that Congress referred to included term, indefinite, overseas limited term, and overseas limited appointments of indefinite duration. See supra Part B. We have no doubt that Congress intended OPM to follow its published guidelines and continue to allow FPM Chapter 315 tacking for these types of appointments in addition to career and career-conditional appointments. Therefore, we find that individuals such as Gonji serving under non-temporary overseas limited appointments may use FPM Chapter 315 guidelines to count prior service toward completion of a probationary period.
 
 
 65
 We now turn to the FPM Chapter 315 guidelines listed above to determine whether Gonji's prior federal service is creditable. Gonji's personnel records show that there was no break in service between his last day with the DoD Postal Service and his first day with the DoD Dependents Schools. The Government takes issue only with the remaining two requirements, arguing that Gonji's prior service was not in the "same agency" and not in the "same line of work."
 
 
 66
 2. "Same Agency"
 
 
 67
 The Government argues that Gonji's prior service with the DoD Postal Service cannot be credited toward his one year trial period with the DoD Dependents Schools because "military departments are separate agencies for purposes related to appointment and employment of civilian employees," citing Francis v. Department of the Navy, 53 MSPR 545 (1992). Gonji counters that both the DoD Postal Service and the DoD Dependents Schools are part of the same agency and that comparisons with military departments have no relevance.
 
 
 68
 In Francis, the Board held that the Department of the Army and the Department of the Navy are not part of the "same agency" for purposes of crediting prior service toward completion of a probationary period. The petitioner had argued that the Army and the Navy should be considered the "same agency" because they are both part of the Department of Defense. The Board rejected this argument and relied on the organizational history of the Department of Defense to conclude that "the military departments are to be regarded as separate agencies for purposes related to the appointment and employment of civilian personnel." Id. at 550. The Board found that the organizational history of the Department of Defense indicates that the military service departments were intended to function independently with respect to personnel matters. The Board analyzed the National Security Act Amendments of 1949, Pub.L. No. 81-216, 63 Stat. 578, which redesignated the executive departments of the Army, Navy, and Air Force as military departments, and concluded that the statutory provisions and the legislative history of the Act demonstrate that Congress intended to allow the independent appointing authority and other personnel functions of the military departments to continue as if they remained as separate executive agencies. The Board particularly relied on the section of the Act that authorized the Secretary of Defense to appoint civilian personnel necessary for the performance of the Department of Defense but explicitly excluded the functions of the three military departments from this appointment authority. Id. Sec. 6(b), 63 Stat. at 581; see Francis, 53 MSPR at 550.[12]
 
 
 69
 Although Francis is helpful for our analysis, it does not resolve the dispute at hand because the record before us does not show that Gonji moved from one military department to another as had Ms. Francis. Gonji served under two components of the Department of Defense, the Postal Service and the Dependents Schools. Although the Government asserts that Gonji served under separate military departments, it has directed this court to no authority to establish that either one of these two DoD components falls within an individual military department.
 
 
 70
 As indicated in the Francis analysis, the key to determining whether prior service is in the "same agency" is to identify the appointment authority for each of the positions in which an individual has served. As explained below, we find that the Secretary of Defense retains appointment authority over civilian personnel in the DoD Dependents Schools. If the appointment authority over civilian personnel in the DoD Postal Service likewise rests with the Secretary of Defense, Gonji's prior service was in the "same agency." If the appointment authority over civilian personnel in the DoD Postal Service rests with the Secretary of an individual military department, Gonji's prior service was in that military department and therefore not in the "same agency."
 
 
 71
 The organizational structure of the DoD Dependents Schools reveals that the Secretary of Defense retains appointment authority over DoDDS civilian personnel. See 32 C.F.R. pt. 347--Department of Defense Dependents Schools (DoDDS) (1994). The regulations provide as follows:
 
 
 72
 Pursuant to the authority vested in the Secretary of Defense, [the Assistant Secretary of Defense] is hereby delegated authority as required in the administration and operation of the DoDDS to:
 
 
 73
 1. Exercise the powers vested in the Secretary of Defense by 5 U.S.C. [Secs.] 301, 302, and 3101 on the employment, direction, and general administration of DoDDS civilian personnel.
 
 
 74
 Id. Sec. 347.8 App. A. Therefore, we find that the "agency" under which Gonji served in his position with the Dependents Schools was the Department of Defense and not one of the individual military departments.
 
 
 75
 The status of Gonji's position with the DoD Postal Service is unclear and the issue must be remanded. The DoD Directive establishing the "Military Postal Service" (MPS) designates the Secretary of the Army as the single manager of the MPS, but does not clearly state whether civilian personnel in the MPS serve under the Secretary of the Army, the Secretary of Defense, or the Secretary of a military department controlling the base where the personnel is stationed. See DoDD 4525.6 (May 5, 1980). The Directive authorizes the Secretaries of the military departments to provide military personnel to staff the MPS, but is not clear as to who controls the appointment authority for civilian personnel serving in the MPS. See id. at E(4)(a). Each of the Standard Form 50 Notice of Personnel Actions that Gonji received in his position with the DoD Postal Service listed the "Department of Defense" as the "Employing Department or Agency," as did the personnel actions he received in his DoD Dependents Schools position.
 
 
 76
 There is a substantial uncertainty in the record before us as to whether Gonji's position in the DoD Postal Service was in the Department of Defense or in an individual military department, and Gonji has raised allegations that cannot be disposed of summarily. He has made non-frivolous allegations that his two positions were in the "same agency." He is therefore entitled to an evidentiary hearing on the issue. See Dumas v. Merit Sys. Protection Bd., 789 F.2d 892, 894 (Fed.Cir.1986).
 
 
 77
 3. "Same Line of Work"
 
 
 78
 The Government next argues that Gonji's prior service as a Laborer with the DoD Postal Service was not in the "same line of work" as his Library Technician position with the DoD Dependents Schools. Gonji alleges that the duties he performed in these positions were similar, and that the job skills and performance descriptions rather than the job titles control whether positions are in the "same line of work."
 
 
 79
 Neither party to this appeal has raised the issue of whether 5 U.S.C. Sec. 7511(a)(1)(A) may have exempted competitive service appointees from a "same or similar positions" or "same line of work" requirement. See Mathis v. United States Postal Serv., 865 F.2d 232, 234 (Fed.Cir.1988) (recognizing that 5 U.S.C. Sec. 7511(a)(1) does not include the "same or similar positions" requirement for individuals in the competitive service). We therefore do not reach this issue.
 
 
 80
 At the time of Gonji's termination, the Federal Personnel Manual defined the term "same line of work" as follows:
 
 
 81
 For purposes of the probationary period, "same line of work" means that the duties performed are similar in nature and character and require substantially the same qualifications (including knowledges, skills and abilities), so that an employee could be interchanged between the positions without significant training or undue interruption to the work. The controlling factor remains the duties actually performed, and agencies must make this determination on an individual basis.
 
 
 82
 FPM Ch. 315, 8-4a (1992).
 
 
 83
 In his appeal to the Board, Gonji alleged that his prior service was in the "same line of work." Gonji attached an affidavit describing each of his two positions in similar terms. He described his position in the DoD Postal Service as including filing, accountability, inventory, administrative duties, and other work related to the mail services. He similarly described his duties at the DoD Dependents Schools as involving filing, accountability, and related administrative tasks within the school library. He stated that "[t]hese tasks and responsibilities were similar to those which I performed in my former position with the Post Office," and stated that he "received no additional or specialized training or instructions for this position." Manifestly, Gonji has raised non-frivolous allegations that his two positions were in the "same line of work." He is therefore entitled to an evidentiary hearing on the issue. See Dumas, 789 F.2d at 894.
 
 D. Back Pay
 
 84
 Gonji has also requested back pay arising from the cancellation of a previous notice of termination. Regardless of whether Gonji had completed his probationary period, he was entitled to a written termination notice. The agency must notify the individual in writing and at least state its conclusions as to the inadequacies of the individual's performance or conduct. See 5 C.F.R. Sec. 315.804 (1995). The agency initially notified Gonji of his termination by a letter dated June 24, 1993. Apparently, the agency determined that its initial notice was deficient, canceled the termination, and reinstated Gonji's termination through a second notice letter dated August 26, 1993.
 
 
 85
 Gonji has requested back pay for the interim period of the canceled and the reissued termination notices. See 5 U.S.C. Sec. 5596 (1994); 5 C.F.R. pt. 550 subpt. H (1995). The Board will not reach the issue of whether Gonji is entitled to back pay unless it acquires jurisdiction over Gonji's appeal from his removal. His request for back pay did not create an independent basis for Board jurisdiction. The Board did not address Gonji's request for back pay because it concluded that it did not have jurisdiction over his appeal. We remand this issue to be considered by the Board should it determine that it has jurisdiction over Gonji's appeal.
 
 CONCLUSION
 
 86
 As an individual in the competitive service serving under an overseas limited term appointment subject to a probationary period at the time he was terminated, Gonji may count creditable prior service toward the completion of his probationary period. The only jurisdictional question remaining is whether Gonji's prior service is creditable. Gonji has raised non-frivolous allegations that his prior service as a Laborer in the DoD Postal Service meets the criteria for crediting prior service. He has alleged that his prior service was in the "same agency" and the "same line of work" as the position from which he was terminated as a Library Technician with the DoD Dependents Schools. Gonji is entitled to an evidentiary hearing on these issues. We therefore remand for such a hearing.
 
 
 87
 Gonji is entitled to costs.
 
 
 88
 VACATED AND REMANDED.
 
 
 
 [1]
 The December 10, 1993 initial decision of the Administrative Judge became the final decision of the Board on June 2, 1994 when the Board denied Gonji's petition for review. See 5 C.F.R. Sec. 1201.113(b) (1995)
 
 
 [2]
 In order to avoid confusion, we refrain from using the term "probationary employee" as we have in the past. See, e.g., Mastriano v. Federal Aviation Admin., 714 F.2d 1152, 1155 (Fed.Cir.1983) ("There is no statutory authorization for an appeal by probationary employees to the MSPB. They are not employees within the meaning of 5 U.S.C. Sec. 7511(a)(1)."). For the sake of clarity, we refer to these individuals as "probationers" or "probationary appointees."
 
 
 [3]
 The Office of Personnel Management (OPM) abolished the entire 10,000 page Federal Personnel Manual (FPM) effective December 31, 1993 pursuant to a recommendation from the Vice President's National Performance Review, but most sections of the manual were provisionally retained through December 31, 1994 to enable OPM to issue regulations to replace needed instructions found only in the FPM. Each section of the FPM cited in this opinion remained in effect, unless otherwise stated, on all dates relevant to this appeal
 
 
 [4]
 Section 7511(a)(1) defines the term "employee" for the purposes of sections 7512, 7513, and 7514, which outline the rights of appointees subjected to adverse employment actions more severe than 14 day suspensions
 
 
 [5]
 Congress added subsection (C) in 1990 to extend full appeal rights to non-preference eligibles in the excepted service. See Civil Service Due Process Amendments, Pub.L. No. 101-376, Sec. 2(a), 1990 U.S.C.C.A.N. (104 Stat.) 461; see also H.R.Rep. No. 328, 101st Cong., 2d Sess. 6 (1990), reprinted in 1990 U.S.C.C.A.N. 695, 700
 
 
 [6]
 Section 7511(a)(1)(A) as originally enacted was not explicitly subdivided. The section was split into separate subdivisions (i) and (ii) in 1990 without comment with the Civil Service Due Process Amendments, supra note 5
 
 
 [7]
 The term "current continuous employment" in subsection 7511(a)(1)(A)(ii) was changed to "current continuous service" in 1990 without comment with the Civil Service Due Process Amendments, supra note 5
 
 
 [8]
 Before the Civil Service Reform Act of 1978 was enacted, the regulations contained a similar explanatory definition of the term "employee":
 (a) Employees covered. This subpart applies to:
 (1)(i) Any career, career-conditional[,] overseas limited, indefinite, or term employee, or any employee serving under a career executive assignment, in a competitive position who is not serving a probationary or trail [sic] period and (ii) any employee serving in a competitive position who has completed 1 year of current continuous employment except one serving under a temporary appointment with a definite time limitation or a limited executive assignment; ....
 
 
 [5]
 C.F.R. Sec. 752.201(a)(1) (1978). OPM amended the regulations early in 1979 to simply cite the new statute:
 (b) Employees covered. The following employees are covered by this subpart:
 (1) An employee covered by the definition in 5 U.S.C. [Sec.] 7511(a)(1)(A),....
 
 
 [5]
 C.F.R. Sec. 752.401(b)(1) (1979). This cursory definition of "employee" remained until 1988 when OPM amended the section to return to a more explanatory definition
 
 
 [9]
 In 1988, OPM placed definitions for the terms "current continuous employment" and "same or similar positions" in the Civil Service Regulations as standards for crediting "current continuous service" under subdivision (A)(ii) of 5 U.S.C. Sec. 7511(a)(1), but left the standards for crediting prior service toward completion of a probationary period [ (A)(i) ] in the FPM (Chapter 315). Rules & Regulations, 53 Fed.Reg. 21,618 (1988) (amending 5 C.F.R. Secs. 752.201, 752.402)
 With the recent abolishment of the Federal Personnel Manual, OPM has now proposed rules to move FPM Chapter 315 standards into the Civil Service Regulations. See Proposed Rules, 59 Fed.Reg. 52,925 (Oct. 20, 1994). OPM has proposed to amend 5 C.F.R. Sec. 315.802 to specify how prior service is credited toward completion of probation. Id. at 52,926-27. These proposed rules are essentially identical to the established standards as they have existed in FPM Chapter 315 since before 1978. See FPM Ch. 315, App. A-3(c) (1975).
 
 
 [10]
 "[S]ervice in a previous agency" means prior service in a different agency. The parenthetical refers to the exception to the "same agency" requirement for individuals who arrive at a new position by transfer rather than by a new appointment. Individuals who are transferred from one agency to another during their probationary period may complete the remainder of their probation in the new position and are not required to meet the "same agency" or "same line of work" requirements otherwise applied when crediting prior service. See 5 C.F.R. Sec. 315.801(b) (1995); FPM Ch. 315, 8-4b (1992); see also FPM Ch. 315 8-2e (1989) (superseded with 1992 revisions) ("The [appointee] does not have to serve a new probationary period after position change or transfer, regardless of a change in his/her line of work."). Gonji does not qualify for this exception because his move from the DoD Postal Service to the DoD Dependents Schools was through a new appointment rather than by transfer. The FPM makes it clear that agencies may not transfer individuals serving under overseas limited appointments. FPM Ch. 301, 2-6c (1981)
 
 
 [11]
 The phrase "not serving a trial period" means having served and completed a trial period. See supra Part B; S.Rep. No. 969, 95th Cong., 2d Sess. 48 (1978), reprinted in 1978 U.S.C.C.A.N. 2723, 2770; 5 C.F.R. Sec. 752.401(c)(1) (1995) (defining a covered employee as an individual "in the competitive service who has completed a probationary or trial period") (emphasis added)
 
 
 [12]
 Section 6(b) of the National Security Act Amendments of 1949, Pub.L. No. 81-216, 63 Stat. 578 (1949) (codified at 5 U.S.C. Sec. 171d (Supp. III 1950)), was transferred from title 5 to title 10 of the United States Code in 1962, pursuant to Pub.L. No. 87-651, 76 Stat. 506, 519-20 (1962) (codified at 10 U.S.C. Sec. 1580 (Supp. IV 1963)), see S.Rep. No. 1876, 87th Cong., 2d Sess. (1962), reprinted in 1962 U.S.C.C.A.N. 2456, 2467, and repealed without comment in 1966 pursuant to Pub.L. No. 89-718, 80 Stat. 1115, 1117 (1966). See S.Rep. No. 1748, 89th Cong., 2d Sess. 11 (1966), reprinted in 1966 U.S.C.C.A.N. 3701, 3703-04
 Although the language from section 6(b) relied upon by the Board in the 1992 Francis case had been repealed in 1966, the Board's analysis remains valid. Even with the repeal of this statute, the appointment authority of the Secretary of Defense has generally not extended to civilian personnel in the military departments. See, e.g., 10 U.S.C. Sec. 1586(b) (1994) (describing a specific appointment authority as vested in "the Secretary of Defense with respect to civilian employees of the Department of Defense other than employees of a military department, and the Secretary of each military department with respect to civilian employees of such military department").